**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Case No. _____**

_____

|                                          |     |                          |
| ---------------------------------------- | --- | ------------------------ |
| JESSICA NIBERT,                          | )   |                          |
|                                          | )   |                          |
| Plaintiff,                               | )   |                          |
|                                          | )   |                          |
| vs.                                      | )   | **COMPLAINT**            |
|                                          | )   | **(Jury Trial Demanded)**|
|                                          | )   |                          |
| WELLS FARGO BANK, N.A.,                  | )   |                          |
|                                          | )   |                          |
|                                          | )   |                          |
| Defendant.                               | )   |                          |
| _____ | )   |                          |

Plaintiff Jessica Nibert ("Plaintiff" or "Ms. Nibert" or "Jessica") complains of Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff Jessica Nibert is an adult citizen and resident of Mecklenburg County, North Carolina.

2.      Defendant Wells Fargo is a national bank having its principal place of business in Sioux Falls, South Dakota. At all times pertinent to this Complaint, Wells Fargo did business in this district.

3.      Upon information and belief, Wells Fargo is an employer for purposes of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"), in that it has more than 15 employees for each working day in each of twenty or more

calendar weeks in the current or preceding calendar year, and is engaged in an industry affecting commerce.

4. On or about July 21, 2016, Plaintiff completed an Intake Questionnaire with the Equal Employment Opportunity Commission ("EEOC"). On or about August 17, 2016, she executed a Form 5, designated as EEOC Charge No. 430-2016-01911, asserting sex discrimination, disability discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964[1]

5. On or about May 31, 2017, the EEOC issued Plaintiff a Right to Sue Letter. Plaintiff timely filed her Complaint within 90 days after receiving the Right to Sue letter.

6. This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331 in that Plaintiff's claims arise under the laws of the United States. The Court should exercise its powers of supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 because they are so related to Plaintiff's claims over which the Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). Wells Fargo resides in this district.

## FACTUAL ALLEGATIONS

8. In 2012, Wells Fargo hired Plaintiff as a Mortgage Loan Processor.

9. Robert ("Bob") Courtwright was on the managerial staff at Wells Fargo. Almost immediately, he began sexually harassing the Plaintiff.

---

[1] Plaintiff was, at the time of the EEOC Charge and events alleged herein, named Jessica L. Calhoun (née Nibert).

10. For example, shortly after she began working at Wells Fargo, Mr. Courtwright asked Ms. Nibert if she would like to make extra money after work by cooking dinner for him while nude.

11. Mr. Courtright often harassed Ms. Nibert openly. For example, Mr. Courtwright commented that he preferred to have Jessica's cubicle next to his so he could "see her ass and legs all day." Mr. Courtwright commented that Plaintiff had a "nice butt" as she walked upstairs.

12. Ms. Nibert was humiliated by Mr. Courtwright's comments.

13. In 2012, Plaintiff reported the sexual harassment to Kristie Lewis, the Senior Loan Administration Manager at Wells Fargo, who managed Mr. Courtwright and his direct supervisor. Ms. Lewis responded, "oh, that's just Bob," and explained that human resources was aware of similar complaints of Mr. Courtwright's inappropriate behavior. Ms. Lewis directed Plaintiff to ignore Mr. Courtwright's inappropriate comments. Ms. Lewis failed and refused to take any other actions to correct or stop Mr. Courtwright's sexual harassment of Plaintiff.

14. Despite Ms. Nibert's report to Ms. Lewis and similar reports to human resources, Mr. Courtwright remained in his managerial position without discipline. Ms. Nibert continued to be harassed by Mr. Courtwright.

15. Plaintiff reasonably believed that Wells Fargo would not correct Mr. Courtwright's inappropriate behavior.

16. Wells Fargo maintains an instant message system for team members to communicate with each other. A notice at the top of the messaging system claims: "All instant messages sent to and from Wells Fargo team members are logged and subject to archival, monitoring, review, and/or disclosure."

3

17.     Mr. Courtwright regularly and continuously made inappropriate and harassing comments to Ms. Nibert through the Wells Fargo instant message system. Wells Fargo had actual or constructive notice of the harassment that occurred on the instant messaging system.

18.     In 2013, Plaintiff took a medical leave of absence during her pregnancy. When she returned to work, she was informed that Mr. Courtwright was now her direct manager. Mr. Courtwright assigned her the cubicle directly in front of him.

19.     In 2013, Plaintiff was diagnosed with endometriosis. Endometriosis is a chronic disorder that causes severe pelvic pain and cramping as well as heavy menstrual bleeding.

20.     Plaintiff notified Mr. Courtwright that she would occasionally be unable to work due to her disability of endometriosis. Mr. Courtwright advised her that she did not need to apply for FMLA for job protection, but to let him know when she would be out of work.

21.     Plaintiff gave birth on or about January 10, 2014 and went out of work on FMLA leave again.

22.     Ms. Nibert's newborn daughter passed away on January 27, 2014. Mr. Courtwright attended the funeral and told Ms. Nibert that she looked "hot" and that he "couldn't tell she just had a baby."

23.     Following a change in upper management, Mr. Courtwright advised Plaintiff that she should apply for FMLA leave to protect her job. Mr. Courtwright directed Plaintiff to track her intermittent FMLA time as "miscellaneous time" in Wells Fargo's tracking system.

24.     From November 2014 to November 2015, Plaintiff was approved for up to six FMLA days off per month.

25.     From July 2015 to September 2016, Plaintiff was approved for up to seven intermittent FMLA days per month.

4

26.     When Ms. Nibert returned to work after the birth and death of her daughter, Mr. Courtwright continued to harass Ms. Nibert. He repeatedly asked her to meet him in storage closets or break rooms, to "make out." Ms. Nibert rejected his advances.

27.     Mr. Courtwright asked Ms. Nibert to wear skirts or dresses to work so that he could "sneak her into a storage room." He asked her to wear "sexy jeans" on jeans day. Mr. Courtwright asked Jessica to wear shorts if she came to work on a Saturday.

28.     Mr. Courtwright texted Jessica on her personal phone at odd hours, including late at night. He would ask if she was in the shower, because he said he loved thinking of her naked in the shower.

29.     When Ms. Nibert did not respond positively to his advances, Mr. Courtwright acted annoyed with her.

30.     For example, when Ms. Nibert was leaving work, Mr. Courtwright would try to hug her. If Ms. Nibert did not hug him, he would get upset and say that she "did not love him."

31.     Mr. Courtwright asked Plaintiff to leave her husband to be with him. Ms. Nibert told Mr. Courtwright  she would not leave her husband.

32.     Mr. Courtwright told Plaintiff that if she needed to leave early, even as part of her FMLA leave, she would have to send him a picture of her when he got home.

33.     When Plaintiff was out of work due to her illness, Mr. Courtwright would ask her to send him pictures of her.

34.     Ms. Nibert's marriage deteriorated because of the text messages Mr. Courtwright sent her. Her husband encouraged her to report Mr. Courtwright again to human resources.  But, because of Ms. Lewis's comments, Plaintiff was afraid she would be terminated or otherwise retaliated against if she reported Mr. Courtwright's harassment.

35.     After Ms. Nibert separated from her husband, the harassment by Mr. Courtwright intensified.  For example, Mr. Courtwright asked Plaintiff to come to his home. Ms. Nibert—in an attempt to tactfully decline the invitation—advised that there was a state of emergency due to the weather and that they "might get stuck together" on account of the inclement weather. Mr. Courtright responded, "In more ways than one…You have to at least send some good pictures until I see you."

36.     In 2015, Plaintiff again reported Mr. Courtwright's behavior to Ms. Lewis. Ms. Lewis acknowledged that Mr. Courtwright was "strange" and suggested he was having an intimate relationship with another Wells Fargo employee, "Ashli," on Wells Fargo property. Upon information and belief, Mr. Courtwright was also Ashli's supervisor.

37.     Upon information and belief, Wells Fargo's human resources department did not investigate or follow up on these incidents with Plaintiff following her 2012 or 2015 complaints to Ms. Lewis.

38.     It was obvious to Plaintiff that Wells Fargo was not going to discipline Mr. Courtwright or otherwise protect Plaintiff from the harassment.

39.     Ms. Nibert began dating someone else. When Mr. Courtwright became aware of this relationship, he started ignoring Ms. Nibert and treating her differently. He mocked her photos of her boyfriend, and refused to help Ms. Nibert with her FMLA leave.

40.     Mr. Courtwright messaged Ms. Nibert on the Wells Fargo instant message system that he was still waiting to be with her, despite the fact that he was then married to Ashli.

41.     Ms. Nibert began having extreme panic attacks because of the harassment and retaliation she was facing at work.

6

42. In or about April 2016, Plaintiff took a leave of absence due to her disability. She was approved for short-term disability benefits through the Wells Fargo Short Term Disability Plan.

43. On or about May 12, 2016, Plaintiff asked Mr. Courtright about her return to work. Mr. Courtright responded via text message advising Plaintiff that she should not return to work but instead start seeking another job.

44. Plaintiff returned to work on or about May 12, 2016. Mr. Courtwright continued to treat her negatively because of her new relationship and because she was not responding favorably to his sexual requests, messages, and innuendos.

45. On or about May 12, 2016, Plaintiff again reported her complaints to human resources.

46. Hours after Plaintiff made the May 12, 2016 report to human resources, she was informed of an investigation into her method for recording her FMLA leave, which method Mr. Courtwright had instructed her to use.

47. Plaintiff went out of work on a disability leave again from May 31, 2016 until July 18, 2016. She was again approved for short-term disability benefits under the Wells Fargo Short-Term Disability Plan.

48. Ms. Nibert applied for and received intermittent leave as an accommodation under the ADA of up to two intermittent absences per month.

49. Ms. Nibert was terminated from Wells Fargo on or about August 22, 2016Plaintiff has satisfied all administrative requirements prior to filing suit, or such requirements are futile or have been waived.

## FIRST CAUSE OF ACTION
## Sexual Harassment/Hostile Work Environment in Violation of Title VII of The Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

50.     Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

51.     Plaintiff is female and belongs to a protected class under Title VII.

52.     Plaintiff's manager, Robert Courtwright, engaged in intimidation, ridicule, and insult that was directed at Plaintiff.

53.     Mr. Courtwright's harassment of Plaintiff was unwelcome.

54.     Mr. Courtwright's harassment of Plaintiff was based upon her sex.

55.     Mr. Courtwright's harassment of Plaintiff was so severe and pervasive that it altered the conditions of her employment and created an objectively hostile working environment.

56.     Plaintiff subjectively viewed Mr. Courtwright's harassment of her as abusive.

57.     At all times relevant to the events alleged herein, Defendant employed both Plaintiff and Mr. Courtwright.

58.     Defendant did not exercise any reasonable care to prevent or correct any sexually harassing behavior by Mr. Courtwright.

59.     Upon information and belief, Defendant's actions were taken with malice and/or reckless indifference to Plaintiff's federally protected rights.

60.     As a direct and proximate result of Defendant's violations of Title VII of the Civil Rights Act of 1964, Plaintiff has been damaged in an amount to be determined at trial, including but not limited to compensatory and punitive damages.

## SECOND CAUSE OF ACTION
### Sexual Harassment/Quid Pro Quo in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

48.    Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

49.    Plaintiff is female and belongs to a protected class under Title VII.

50.    Plaintiff was subject to unwelcome sexual harassment and sexual advances by Mr. Courtwright.

51.    Mr. Courtwright's harassment of Plaintiff was based upon her sex.

52.    Plaintiff's rejection of Mr. Courtwright's unwelcome sexual advances affected tangible aspects of the terms, conditions, and privileges of her employment.

53.    At all times relevant to the events alleged herein, Defendant employed both Plaintiff and Mr. Courtwright.

54.    Defendant did not exercise reasonable care to prevent or correct any sexually harassing behavior.

55.    Upon information and belief, Defendant's actions were also taken with malice and/or reckless indifference to Plaintiff's federally protected rights.

56.    As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has been damaged in an amount to be determined at trial, including but not limited to compensatory and punitive damages.

## THIRD CAUSE OF ACTION
### Sexual Harassment/Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

57.    Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

58. At numerous times as described herein, Plaintiff engaged in protected activity when she reasonably opposed what she reasonably believed to be Defendant's unlawful sexual harassment, protected under Title VII, as alleged herein.

59. Defendant was aware that Plaintiff had engaged in said protected activities.

60. From the time Plaintiff first opposed said Defendant's practices, Plaintiff repeatedly asserted her interest in working or continuing to work in available positions for which she was qualified.

61. Defendant's actions as described herein, made without legitimate business reason and including by way of example but not limitation terminating Plaintiff in retaliation for her having engaged in said protected activities.

62. As described herein, Defendant discriminated and retaliated against Plaintiff on an ongoing basis from the time Plaintiff opposed Defendant's practice made unlawful by Title VII and this ongoing discrimination and retaliation evidenced a pattern of antagonism and/or recurring retaliatory animus through the time Defendant discharged Plaintiff.

63. Defendant's actions, as alleged herein, were intended to intimidate and chill others from opposing practices made unlawful under Title VII.

64. Defendant's actions, as alleged herein, were intentional and committed with malice or reckless indifference to Plaintiff's federally protected rights.

65. As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has been damaged in an amount to be determined at trial, including but not limited to compensatory and punitive damages.

## FOURTH CAUSE OF ACTION
### Retaliation in Violation of the Americans with Disabilities Act,
### 42 U.S.C. § 12101, et seq.

66.     Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

67.     At numerous times as described herein, Plaintiff engaged in protected activity when she reasonably opposed what she reasonably believed to be Defendant's unlawful activities regarding Plaintiff's disability (endometriosis), protected under the ADA, as alleged herein.

68.     Defendant was aware that Plaintiff had engaged in said protected activities.

69.     From the time Plaintiff first opposed said Defendant's practices, Plaintiff repeatedly asserted her interest in working or continuing to work in available positions for which she was qualified.

70.     Defendant's actions as described herein, were made without legitimate business reason and including by way of example but not limitation terminating Plaintiff in retaliation for her having engaged in said protected activities.

71.     As described herein, Defendant discriminated and retaliated against Plaintiff on an ongoing basis from the time Plaintiff opposed Defendant's practice made unlawful by the ADA and this ongoing discrimination and retaliation evidenced a pattern of antagonism and/or recurring retaliatory animus through the time Defendant discharged Plaintiff.

72.     Defendant's actions, as alleged herein, were intended to intimidate and chill others from opposing practices made unlawful under the ADA.

73.     Defendant's actions, as alleged herein, were intentional and committed with malice or reckless indifference to Plaintiff's federally protected rights.

74.     As a direct and proximate result of Defendant's violations of the ADA, Plaintiff has been damaged in an amount to be determined at trial, including but not limited to compensatory and punitive damages.

**FIFTH CAUSE OF ACTION**
**Termination in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12011 *et seq*.**

75.     Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

76.     Plaintiff had a disability under the terms of the ADA as a result of having endometriosis, a condition which causes severe pain and intermittent heavy bleeding.

77.      Plaintiff's medical condition substantially limits one or more of her major life activities, including walking, sleeping, and other major life activities.

78.     Plaintiff has a record of impairment on account of her endometriosis, including having a history of the disease and a continuing need of treatment for the disease.

79.     Plaintiff was also regarded by Defendant as having an impairment on account of her endometriosis.

80.     The Defendant terminated Plaintiff in violation of the ADA, although Plaintiff was capable of performing her job at the time of her termination.

81.     Defendant's actions were willful in that they were done with the intent to terminate Plaintiff on account of her disability.

82.     Plaintiff is entitled to reinstatement to her position.

83.     As a result of Defendant's violation of the ADA, Plaintiff is entitled to recover damages from Wells Fargo, including but not limited to, back pay, front pay, and benefits of employment, the exact amount to be calculated at trial.

84.     Wells Fargo acted against Plaintiff with either malice or with reckless indifference to the federally protected rights of Plaintiff under the ADA and, as a result of the Wells Fargo's willful violation of the ADA, Plaintiff is entitled to punitive damages in an amount to be determined at trial.

85.     As a result of Wells Fargo's violation of the ADA, Plaintiff is entitled to recover her reasonable attorney's fees and the costs of this action.

## SIXTH CAUSE OF ACTION
### Failure to Reasonably Accommodate in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12011 *et seq*.

86.     Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

87.     Plaintiff is a qualified individual with a disability, endometriosis, under the ADA in that Plaintiff is able to perform the essential functions of her job with reasonable accommodation.

88.     Plaintiff requested reasonable accommodation from her employer for, among other things, additional time for medical appointments and additional time away from work on account of the pain and other symptoms associated with her disability.

89.     Wells Fargo at first granted Plaintiff reasonable accommodation and provided Plaintiff with additional time off.  However, Wells Fargo later failed and refused to provide Plaintiff reasonable accommodation on account of her disability, including but not limited to by failing to provide her with additional time for medical appointments and additional time away from work on account of the pain and other symptoms associated with her disability.

90.     Defendant's actions are in violation of the ADA.

91. Defendant's actions were willful in that they were done with the intent to interfere and restrain Plaintiff from receiving reasonable accommodation.

92. Plaintiff is entitled to reinstatement to her position with appropriate reasonable accommodation.

93. As a result of Defendant's violation of the ADA, Plaintiff is entitled to recover damages from Wells Fargo, including but not limited to, back pay, front pay, and benefits of employment, the exact amount to be calculated at trial.

94. Wells Fargo acted against Plaintiff with either malice or with reckless indifference to the federally protected rights of Plaintiff under the ADA and, as a result of the Wells Fargo's willful violation of the ADA, Plaintiff is entitled to punitive damages in an amount to be determined at trial.

95. As a result of Wells Fargo's violation of the ADA, Plaintiff is entitled to recover her reasonable attorney's fees and the costs of this action.

## SEVENTH CAUSE OF ACTION
### Interference in Violation of The Family and Medical Leave Act

96. Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

97. Plaintiff had a serious health condition under the terms of the FMLA as a result of having endometriosis, a condition which causes severe pain and intermittent heavy bleeding.

98. Plaintiff was an eligible employee entitled to leave under the FMLA on account of this serious health condition.

99. The Defendant terminated Plaintiff to interfere with and restrain her from exercising her rights under the FMLA.

14

100.     Defendant's actions were willful in that they were done with the intent to interfere with and restrain her from exercising her rights under FMLA.

101.     Under the FMLA, Plaintiff is entitled to reinstatement to her position.

102.     As a result of Defendant's violation of the FMLA, Plaintiff is entitled to recover damages from Wells Fargo, including but not limited to, back pay, front pay, and benefits of employment, the exact amount to be calculated at trial.

103.     Wells Fargo acted against Plaintiff with either malice or with reckless indifference to the federally protected rights of Plaintiff under FMLA and, as a result of the Wells Fargo's willful violation of the FMLA, Plaintiff is entitled to liquidated damages in an amount equal to her actual damages.

104.     As a result of Wells Fargo's violation of the FMLA, Plaintiff is entitled to recover her reasonable attorney's fees and the costs of this action.

**EIGHTH CAUSE OF ACTION**
**Retaliation in Violation of The Family and Medical Leave Act**

105.     Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

106.     Plaintiff had a serious health condition under the terms of the FMLA as a result of having endometriosis, a condition which causes severe pain and intermittent heavy bleeding.

107.     Plaintiff was an eligible employee entitled to leave under the FMLA on account of this serious health condition.

108.     Wells Fargo terminated Plaintiff to interfere with and restrain her from exercising her rights under the FMLA.

109.     Wells Fargo terminated Plaintiff to retaliate against Plaintiff on account of her exercising her rights under the FMLA.

110. Defendant's actions were willful in that they were done with the intent to retaliate against her for exercising her rights under FMLA.

111. Under the FMLA, Plaintiff is entitled to reinstatement to her position.

112. As a result of Defendant's violation of the FMLA, Plaintiff is entitled to recover from Wells Fargo damages, including but not limited to, back pay, front pay, and benefits of employment, the exact amount to be calculated at trial.

113. The Defendant acted against Plaintiff with either malice or with reckless indifference to the federally protected rights of Plaintiff under FMLA and, as a result of the Wells Fargo's willful violation of the FMLA, Plaintiff is entitled to liquidated damages in an amount equal to her actual damages.

114. As a result of the Defendant's violation of the FMLA, Plaintiff is entitled to recover her reasonable attorney's fees and the costs of this action.

## NINTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

115. Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

116. The actions of Defendant's agents and employees were taken within the scope of their employment with Defendant. Defendant is therefore sued for its conduct in *respondeat superior.*

117. The Defendant, through the conduct of its managers, engaged in extreme and outrageous conduct. This conduct, when taken as a whole, exceeded all bounds usually accepted by decent society, and included, by way of example and not limitation:

      a)       condoning Mr. Courtwright's severely harassing behavior;

16

b)  directing Plaintiff to ignore Mr. Courtwright's continuous illegal harassment of women in violation of Title VII;

c)  fabricating a pretextual investigation as a rationale to terminate Plaintiff when it:

i) knew that Plaintiff suffered a serious condition;

ii) knew that Plaintiff was on protected FMLA medical leave;

iii) knew that Plaintiff was not released to return to work; and

iv) knew that Courtwright directed Plaintiff to record her FMLA leave in a certain manner.

118. Defendant's conduct was either intended to cause or was recklessly indifferent to the likelihood that it would cause severe mental and emotional distress to Plaintiff.

119. Upon information and belief, Courtwright and Lewis were "managers" of the Defendant, as "manager" is defined in N. C. Gen. Stat. § 1D-15(c), discharging their authorized duties within the normal course and scope of their employment with the Defendant and in furtherance of the Defendant's interests, and their wrongful discharge of these duties is the conduct complained of herein. Therefore, the Defendant is liable for punitive damages for their malicious and/or willful and wanton conduct in an amount to be established at trial which would punish the Defendant for its conduct and which would deter others from engaging in such conduct in the future.

120. Defendant's conduct in fact caused severe mental and emotional distress to Plaintiff, which included, by way of example and not limitation, fear, distress, anxiety, mental anguish, embarrassment, extreme stress, and extreme concern about her well-being.

121.     As a direct result of said conduct, Plaintiff has suffered and will continue to suffer severe mental and emotional distress, medically diagnosed depression, emotional pain, suffering, inconvenience, embarrassment, mental anguish, anxiety and other non-pecuniary losses in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress

122.     Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

123.     The actions of Defendant's agents and employees were taken within the scope of their employment with Defendant.  Defendant is therefore sued for its conduct in *respondeat superior.*

124.     The Defendant was negligent in the handling and investigation of Plaintiff's complaints, in not properly dealing with the discrimination and retaliation of its managers, in not offering an appropriate remedy to Plaintiff, in wrongfully terminating Plaintiff, and in terminating the Plaintiff in the manner described herein.

125.     By the negligent actions of Defendant described above, Defendant, through its agents and employees, knew or should have known that the hostile work environment and retaliatory conduct toward plaintiff would offend, demean, intimidate, and injure her.  As Plaintiff's employer, Defendant had a duty to prevent and remedy the mistreatment suffered by Plaintiff.  As described above, Defendant breached this duty causing Plaintiff emotional harm.

126.     Upon information and belief, Courtwright and Lewis were "managers" of the Defendant, as "manager" is defined in N. C. Gen. Stat. § 1D-15(c), discharging their authorized duties within the normal course and scope of their employment with the Defendant and in furtherance of the Defendant's interests, and their wrongful discharge of these duties is the

conduct complained of herein. Therefore, the Defendant is liable for punitive damages for their malicious and/or willful and wanton conduct in an amount to be established at trial which would punish the Defendant for its conduct and which would deter others from engaging in such conduct in the future.

127.     Emotional distress is a reasonably foreseeable result of Defendant's discrimination against, harassment of and retaliation against plaintiff in the workplace and its creation of intolerable working conditions for plaintiff.   Defendant's conduct is intolerable and outrageous to society's expectations of employers and managers.

128.     As a direct result of Defendant's actions, Plaintiff suffered emotional distress that caused great anxiety and harmed her family life and careers.

### ELEVENTH CAUSE OF ACTION
### Negligent Retention and Supervision

129.     Plaintiff realleges and incorporates by reference all preceding paragraphs.

130.     Defendant owed a duty to use ordinary care to protect plaintiff from harassing, oppressive, and retaliatory conduct and injury from its managers and employees.

131.     Defendant had knowledge of the actions of its managerial employees and agents toward plaintiff.  Plaintiff reported the discriminatory, hostile and retaliatory work conditions to Defendant on several occasions. Defendant knew or should have known that such work conditions existed for Plaintiff.

132.     Defendant was negligent in failing to take adequate measures to supervise Plaintiff's superiors and to stop their unlawful mistreatment of Plaintiff.   To the contrary, Defendant shielded Plaintiff's superiors and other of its agents, thus enabling further discriminatory, harassing and retaliatory behavior toward Plaintiff.

133.     Defendant's negligent supervision and retention of Plaintiff's superiors and of its employees fostered and validated an already oppressive work environment for Plaintiff, and was a direct and proximate cause of the injuries and harm to Plaintiff.

134.     As a direct result of the negligence of Defendant in retaining and supervising Plaintiff's superiors, and condoning their conduct, Defendant acted wantonly, willfully, and in disregard of the protected rights of Plaintiff, thus entitling her to an award of compensatory and punitive damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant the following relief:

1.     A trial by jury on all issues so triable;

2.     That Plaintiff be awarded a money judgment against Defendant for violation of Title VII of the Civil Rights Act of 1964, representing all lost benefits of employment, including but not limited to loss of wages and loss of benefits, and an award of compensatory damages, including but not limited to emotional distress damages, for an amount to be determined specifically at the trial of this action;

3.     An award for Plaintiff against Defendant for punitive damages pursuant to the Civil Rights Act of 1964, N.C. Gen. Stat. § 1D-1, et seq., and all other applicable law;

4.     That that acts and practices complained of herein be declared in violation of Title VII.;

5.     That the Defendant be enjoined from engaging in discrimination in violation of the Title VII;

6.     That Defendant be enjoined from engaging in retaliation in violation of Title VII;

7.     That an injunction be issued reinstating Plaintiff to her position or, in the alternative, that Plaintiff be awarded front pay for Defendants violations of Title VII;

8.     That Plaintiff have and recover of Defendant, pursuant to Title VII, Plaintiff's attorneys' fees;

9.     That Plaintiff be awarded a money judgment against Defendant for violation of the ADA, representing all lost benefits of employment, including but not limited to loss of wages and loss of benefits, and an award of compensatory damages, including but not limited to emotional distress damages, for an amount to be determined specifically at the trial of this action;

10.     An award for Plaintiff against Defendant for punitive damages pursuant to the ADA, N.C. Gen. Stat. § 1D-1, et seq., and all other applicable law;

11.     That that acts and practices complained of herein be declared in violation of the ADA;

12.     That the Defendant be enjoined from engaging in discrimination in violation of the ADA;

13.     That Defendant be enjoined from engaging in retaliation in violation of the ADA;

14.     That Plaintiff have and recover of Defendant, pursuant to the ADA, Plaintiff's attorneys' fees;

15.     That that acts and practices complained of herein be declared in violation of the FMLA;

16.     That an injunction be issued reinstating Plaintiff to her position or, in the alternative, that Plaintiff be awarded front pay;

17.     That Plaintiff have and recover of Defendant monetary damages for violation of her rights under the FMLA and an equal amount in liquidated damages;

18.     That Plaintiff be reinstated to her position of Mortgage Loan Processor with the Defendant, or, in the alternative, that Plaintiff be awarded front pay;

19.     That the Defendant be enjoined from engaging in interference in violation of the FMLA;

20.     That Defendant be enjoined from engaging in retaliation in violation of the FMLA;

21.     That Plaintiff have and recover of Defendant a money judgment for lost benefits of employment and compensatory damages for Defendant's intentional infliction of emotional distress on Plaintiff;

22.     That Plaintiff have and recover of Defendant, pursuant to the FMLA, Plaintiff's attorneys' fees.

23.     That Plaintiff have and recover of Defendant punitive damages for Defendant's intentional infliction of emotional distress on Plaintiff;

24.     That Plaintiff have and recover of Defendant a money judgment for lost benefits of employment and compensatory damages for Defendant's negligent infliction of emotional distress on Plaintiff;

25.     That Plaintiff have and recover of Defendant punitive damages for Defendant's negligent infliction of emotional distress on Plaintiff;

26.     That Plaintiff have and recover of Defendant a money judgment for lost benefits of employment and compensatory damages for Defendant's negligent retention and supervision;

27.     That Plaintiff have and recover of Defendant punitive damages for Defendant's negligent retention and supervision;

28.     That Plaintiff have and recover of Defendant the costs of this action;

29.     That Plaintiff have and recover of Defendant interest allowed by law; and

30.     For such other and further relief as the court may deem just and proper.


This the 29th day of August, 2017.


 *s/ Bryan L. Tyson*
Bryan L. Tyson (N.C. Bar. No. 32182)
Marcellino & Tyson, PLLC
1315 East Boulevard, Suite 250
Charlotte, North Carolina 28203
Telephone: 704.919.1519
Fax: 980.219.7025
bryan@yourncattorney.com


*s/ Rachel C. Matesic*
Rachel C. Matesic (N.C. Bar. No. 50156)
Marcellino & Tyson, PLLC
1315 East Boulevard, Suite 250
Charlotte, North Carolina 28203
Telephone: 704.919.1519
Fax: 980.219.7025
rachel@yourncattorney.com


*s/ William Trosch*
William Trosch (N.C. Bar. No. 20163)
Conrad Trosch & Kemmy, P.A.
Suite 1001, Cameron Brown Building
301 S. McDowell Street
Charlotte, NC  28204
Telephone: (704)553-8221
Fax: (704)331-0595
troschbill@ctklawyers.com


*s/ Casey L. Couch*
Casey L. Couch (N.C. Bar. No. 50266)
Conrad Trosch & Kemmy, P.A.
Suite 1001, Cameron Brown Building
301 S. McDowell Street
Charlotte, NC  28204
Telephone: (704)553-8221
Fax: (704)331-0595
ccouch@ctklawyers.com


*Attorneys for Plaintiff Jessica Nibert*